IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                    CRIMINAL NO.: 3:24-cr-111-GHD-RP

OMAR CHARLESTON                                              DEFENDANT

**MEMORANDUM OPINION**

Presently before the Court is Defendant Omar Charleston's ("Defendant") Motion for New Trial [Doc. No. 44]. Upon due consideration and for the reasons set forth herein, the Court finds Defendant's Motion shall be denied.

### I.    Factual Background

A federal grand jury indicted Defendant on September 25, 2024, in a three-count indictment [1]. Count one charged Defendant with kidnapping in violation of 18 U.S.C. § 1201(a)(1); count two charged Defendant with interstate domestic violence in violation of 18 U.S.C. § 2261(a)(2); and count three charged Defendant with stalking in violation of 18 U.S.C. § 2261A [*Id.*].

During the two-day trial beginning on June 30, 2025, jurors heard testimony from six witnesses and viewed several exhibits, including video and audio evidence, before unanimously finding Defendant guilty on all three counts [36; 37; 45]. Defendant now moves for a new trial under Federal Rule of Criminal Procedure 33(b)(2).

### II.    Standard of Review

Rule 33 of the Federal Rules of Criminal Procedure provides, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(b). "In th[e Fifth] Circuit, the generally accepted standard is that a new trial ordinarily should not be granted 'unless there would be a miscarriage of justice or the

weight of the evidence preponderates against the verdict.'" *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (quoting *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004)). "'A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant.'" *Id*. (quoting *Wall*, 389 F.3d at 366). Accordingly, "harmless error," which is defined as "[a]ny error, defect, irregularity or variance which does not affect substantial rights," Fed. R. Crim. P. 52(a), does not warrant a new trial. *United States v. Akpan*, 407 F.3d 360, 369-70 (5th Cir. 2005).

### III.    Analysis

Defendant makes four arguments in support of his Motion: (1) the jury venire was not drawn from a fair cross-section of the community; (2) Defendant was prejudiced when the prosecution and government witnesses made improper remarks attempting to define "legal terms such as 'force' and 'kidnapping';" (3) the government impermissibly "sent a message" to the jury concerning "victims" of domestic violence; and (4) this Court erred in allowing the government to question Ms. Gabriella Grosser as an adverse witness [44].

### A.  Jury Venire

Defendant first contends his "jury venire was not drawn from a fair cross-section of the community," noting "[t]he composition of the jury pool reflected a striking lack of diversity, with only one Black American individual available for selection" [44]. In its response, the prosecution acknowledges jury panels' constant "fluctuation in demographics" and the impossibility "to draw a panel" exactly matching "the demographics of the division" while maintaining "it is clear that the juries are drawn from the community as a whole" [45]. Since neither of the parties felt obligated to conduct a thorough analysis in their briefing on this issue, the Court does so here.

Defendant's arguments are rooted in the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq*. A deadline exists for making such an objection:

2

> In criminal cases, *before* the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

28 U.S.C. § 1867(a) (emphasis added). This timeliness standard is "strictly enforced," and the Fifth Circuit "has refused to consider a statutory challenge raised after the empaneling of a jury." *United States v. Merlino*, 595 F.2d 1016, 1020 (5th Cir. 1979) (citing *United States v. De Alba-Conrado*, 481 F.2d 1266 (5th Cir. 1973)). In a more recent matter, the Fifth Circuit found a defendant's failure to file "his motion or sworn statement" required under section 1867(d) "before the voir dire examination began" barred his objection. *U.S. v. Rosbottom*, 763 F.3d 408, 415 (5th Cir. 2014). Voir dire in this matter was held on June 30, 2025, but Defendant did not make his objection until July 8, 2025—eight days after his trial's voir dire. Additionally, Defendant made no objection to the jury venire at the time of voir dire, nor directly after. This alone is fatal to Defendant's venire objection, but this Court conducts the following analysis out of an abundance of caution due to a paucity of recent precedent from the Fifth Circuit concerning the timeliness standard.

Both parties cite *United States v. Sanders* to support their arguments concerning the Sixth Amendment unfairly selected jury venire claim. 133 F.4th 341, 372 (5th Cir. 2025). *Sanders* requires defendants demonstrate three factors (also called the *Duren*[1] factors) to make a *prima facie* showing of this claim:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

---
[1] *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

3

133 F.4th at 372. The first factor is clearly met because the Fifth Circuit has repeatedly found black Americans are "a distinctive group within the community." *Id.* at 373 (citing *United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001)).

The second factor requires a more detailed analysis. In *Berghuis v. Smith*, the Supreme Court recognized "two means of measuring the extent of underrepresentation of African-Americans [in jury] venires: 'absolute disparity' and 'comparative disparity.'" 599 U.S. 314, 323 (2010). The Supreme Court however does not specify "the method or test courts must use to measure the representation of distinctive groups in jury pools," and "the proper test in the Fifth Circuit for distinctive groups that are not a less-than-10%-minority is absolute disparity." *United States v. Age*, 136 F.4th 193, 254 (5th Cir. 2025) (citing *Berghuis*, 559 U.S. at 329; *United States v. Maskeny*, 609 F.2d 183, 189-90 (5th Cir. 1980)) (internal quotation marks omitted). One determines absolute disparity "by subtracting the percentage of African-Americans in the jury pool . . . from the percentage of African-Americans in the local, jury-eligible population." *Berghuis*, 559 U.S. at 323.

According to the Clerk of Court's March 6, 2024, AO12 Statistics Report, the percentage of black citizens in the local, jury-eligible population is 30.9%, and the percentage of black citizens in the jury pool was 17.75%. *Sanders*, 133 F.4th at 373 (Fifth Circuit using the 2013 Clerk of Court's AO12 Statistics Report for the same analysis). After subtracting, one finds the absolute disparity is 13.15%. The Fifth Circuit has found "absolute disparities of 10% and 11% failed to satisfy the second prong of the prima facie case." *Sanders*, 133 F.4th at 373. The Fifth Circuit has also found an absolute disparity of 13.5% is sufficient to satisfy the second prong. *Id.* at 373-74. It appears then from this precedent the second prong is likely satisfied.

4

Despite success up to this point, Defendant's objection is rebuffed by the third prong which requires he show the underrepresentation in prong two "is due to *systematic* exclusion of the group in the jury-selection process." *Id*. at 372. Defendant has provided no evidence to show any systematic exclusion; therefore, this objection fails on the third and final prong. *Id*.; see also, *U.S. v. Wheeler*, 79 F. App'x 656, 661 (5th Cir. 2003). For the reasons set out above, Defendant failed to show his "jury venire was not drawn from a fair cross-section of the community," [44] and the Court finds this does not demonstrate an adverse effect on Defendant's substantial rights.

### B. Legally Charged Language and Prosecutorial Misconduct

Defendant next contends he was prejudiced when "the prosecution and [its] witnesses [made several attempts] to define legal terms such as 'force' and 'kidnapping,' which amounted to the improper drawing of legal conclusions" [44]. He takes specific issue with the prosecution's witness, Detective Mary Hall's, use of "emotionally and legally suggestive words such as 'powerless' and 'guilty' to describe what domestic violence victims supposedly look like, drawing a direct parallel to the alleged victim in this case" [46].[2] The prosecution argues, "Neither the prosecutors nor the witnesses used the terms in an improper manner, nor did either one attempt to define those terms" [45]. Regarding the witness's remarks, the prosecution simply argues, "[T]he magnitude of the prejudicial effects of the alleged remarks, if any, was minimal" [*Id.*]. Defendant's attorney made objections during trial to the use of this language, and this Court overruled them. However, the Court notes Defendant failed to request any cautionary instructions concerning these issues.

---

[2] While Defendant's Motion for New Trial [44] separates these remarks into separate addressable issues, he essentially groups them in his Reply to the Government's Response [46]. The Court therefore conducts the prosecutorial misconduct analysis with both in mind as one issue.

Courts follow a two-step analysis when evaluating prosecutorial misconduct claims: (1) "decide whether the prosecutor made an improper remark based on the context in which the remark was made" and (2) if the prosecutor made such a remark, "decide whether the remark prejudiced the defendant's substantive rights." *Sanders*, 133 F.4th at 383 (citing *U.S. v. Morganfield*, 501 F.3d 453, 467 (5th Cir. 2007)) (cleaned up). The second prong determines "whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict" using three factors: "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence against the defendant." *Id*. (cleaned up).

It is clear to this Court the prosecution made no improper remark which would require a new trial, and even if the prosecution had made such a remark, the prejudice would be of little effect. The jury returned a guilty verdict after observing and hearing video and audio evidence of the alleged kidnapping. Defendant's attorney did make objections to the prosecution and its witnesses' use of certain terms, but she did not request any cautionary instructions. The strength of the evidence simply weighs too heavily against Defendant. Therefore, this Court is of the opinion no prosecutorial misconduct occurred, and these objections do not demonstrate an adverse effect on Defendant's substantial rights.

### C. Adverse Witness

Defendant's final contention centers on the Court's permitting the prosecution to treat Ms. Gabriella Grosser as an adverse witness pursuant to Rule 611(c)(2). Defendant's attorney did object to this designation during a sidebar at trial, but this Court overruled the objection. The parties agree the prosecution is allowed to impeach its own witness, and the Rules of Evidence expressly permit such activity. Fed. R. Evid. 607, 611(c)(2). Defendant now contends, however, "Ms. Grosser did not meet the standard of a hostile witness." Although the prosecution may attack

6

the credibility of its own witness, it "may not call a witness it knows to be hostile for the *primary* purpose of eliciting otherwise inadmissible impeachment testimony." *U.S. v. Lewis*, No. 23-30362, 2024 WL 415459, *1 (5th Cir. Feb. 5, 2024) (per curiam) (quoting *U.S. v. Cisneros-Gutierrez*, 517 F.3d 751, 757 (5th Cir. 2008) (internal quotation marks omitted) (emphasis in original). Defendant provides no legal authority to support his argument and has not shown the prosecutor called Ms. Grosser for this primary purpose. The Court finds Defendant's other arguments unpersuasive on this point and is of the opinion Ms. Grosser's designation as an adverse witness does not demonstrate an adverse effect on Defendant's substantial rights.

### IV. Conclusion

For the foregoing reasons, the Court finds Defendant's Motion for New Trial [44] should be denied.

An order in accordance with this opinion shall issue this day.

THIS, the 10th day of September 2025.

_____
SENIOR U.S. DISTRICT JUDGE